## THE MISS C. B.

### MACRIDIS et al. v. UNITED STATES.

### No. 6793.

Circuit Court of Appeals, Fifth Circuit.

Feb. 15, 1933.

Walter J. Gex, of Bay St. Louis, Miss., Matthias Mahorner, of Mobile, Ala., and W. Blair Lancaster, Jr., of New Orleans, La., for appellants.

J. E. Meredith, Asst. U. S. Atty., of Mobile, Ala.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

FOSTER, Circuit Judge.

This is an appeal from decrees imposing penalties assessed against her master, for violations of sections 584 and 585 of the Tariff Act of June 17, 1930 (19 USCA §§ 1584, 1585), against the British schooner Miss C. B., and forfeiting the vessel and her cargo to the United States. The case is similar to that of The Halcon, decided this day, 63 F.(2d) 638, except that the Miss C. B. is a vessel of British registry.

It appears from the record that on the night of March 11, 1932, the Miss C. B. was sighted by boatswain C. D. Ehlers, in command of the Coast Guard cutter Mahoning, at a point off the Louisiana coast eight miles from the nearest land, a small island, and a further distance from the shore of the mainland. When first sighted, she was about two miles away from the cutter. She changed her course, and endeavored to escape. The cutter, running at a speed of about nine miles an hour, pursued her, overhauled her, and got close enough to hail her. Ehlers told her master she was arrested "for being within the

twelve mile limit," and ordered her to heave to. The Miss C. B. did not comply with the order. The Mahoning continued the pursuit, kept alongside, and finally, after firing several blank shots, compelled the Miss C. B. to heave to. This was at a point outside of the twelve-mile limit. There was a strong wind blowing and a heavy sea running. Ehlers did not think it safe to board the Miss C. B. at that time. The cutter stood by until about 6:30 the next morning, when a line was passed to the Miss C. B., and she was towed into Port Eads, near the mouth of the Mississippi river. There she was then boarded and searched. She had a cargo of intoxicating liquor, and her master did not produce a manifest in proper form.

■■ The burden of proof was on the United States to show prima facie that the Miss C. B. was not merely within the twelve-mile limit, but was within one hour's sailing distance of the shore when first sighted. British-American Treaty of May 22, 1924 (43 Stat. 1761). Otherwise the Coast Guard had no right to stop her to examine her papers or to seize her, and the subsequent procedure against her by libel was also illegal. Frank Cook, Petitioner, v. United States, 53 S. Ct. 305, 77 L. Ed. ——, decided January 23, 1933. There is neither allegation in the libel nor proof in the record that the Miss C. B. was ever within one hour's sailing distance of the shore. There is no direct evidence to show what her speed would be under the conditions then prevailing or at any time. It may be assumed that she was making her best speed in order to escape the Coast Guard cutter. As the cutter made up the distance of two miles and easily overhauled her, running at a speed of about nine miles per hour, it may be presumed that the speed of the Miss C. B. was less than eight miles per hour. Ehlers testified that, when he first sighted the Miss C. B., there was another boat near her but this boat was not closer than 100 to 150 yards, and was not identified. It is apparent that under the weather conditions then prevailing it was impossible to tranship any cargo from the Miss C. B. to this boat. There is nothing in the record to show that any of the cargo had in fact been transhipped or that any part of it had been landed in the United States. As the government failed to prove the essential facts necessary to support the seizure, it follows that the judgments appealed from must be reversed.

Reversed and remanded, with instructions to return the custody of the vessel and her cargo to the claimant.