## THE THORNDYKE.

### TRADERS, Limited, v. UNITED STATES.
### No. 4823.

Circuit Court of Appeals, Third Circuit.
Sept. 19, 1933.

Rehearing Denied Oct. 30, 1933.

Frederic M. P. Pearse, of Newark, N. J., and Louis Halle, of New York City, for appellant.

Harlan Besson, U. S. Atty., of Trenton, N. J. (by Isador S. Worth, Asst. U. S. Atty., of Riverside, N. J.), for the United States.

Before WOOLLEY, DAVIS, and THOMPSON, Circuit Judges.

WOOLLEY, Circuit Judge.

United States Coast Guards sighted the British auxiliary schooner "Thorndyke" running at night without lights off the New Jersey coast. On being hailed she refused to heave to. Thereupon the Coast Guards fired warning shots toward her and after a short chase seized her and her cargo of liquor. Later the government filed this libel for forfeiture of the schooner and cargo because of violations of provisions of the Tariff Act of 1930 (19 USCA § 1001 et seq.) and the National Prohibition Act (27 USCA § 1 et seq.). The case went to decree for the government. On appeal it was affirmed by consent. Then came the decision in Cook v. United States, 288 U. S. 102, 53 S. Ct. 305, 77 L. Ed. 641, which the claimant thought, quite correctly, rules its case and, not so correctly, compels a decision in its favor. Upon the claimant's application we struck off the affirmance and heard argument on the appeal which was predicated on the single ground that the libel fails to disclose jurisdiction of the trial court under the treaty between the United States and Great Britain, promulgated May 22, 1924 (43 Stat. 1761), which authorizes officials of our government, when having a reasonable ground to suspect that alcoholic beverages are being unlawfully imported into the United States, to board, search and seize private vessels under the British flag within a distance from the coast that can be traversed in one hour by the vessel suspected of endeavoring to commit the offense.

The libel first alleges that the schooner was sighted and seized "approximately five miles southeast of the Absecon Light on the New Jersey Coast" and next that "at the time of the seizure the said (schooner) was * * * within the admiralty and maritime jurisdiction of the United States of America and of this Honorable Court." It is plain the libel was drafted under section 581 of the Tariff Act of 1930 (19 USCA § 1581), which authorizes officers of the Coast Guard to board suspected vessels and search and seize them within four leagues of the coast, and it was not denied that the schooner in question was searched and seized within that distance. Accordingly, no one having the treaty in mind, the case went against the claimant under the Tariff Act and, as we have said, the decision was here affirmed by a consent decree.

The case being opened and everyone being apprised of the law by the Cook decision, the question now is whether the averments of jurisdiction in the libel, though drafted with an eye to the Tariff Act, and whether the evidence introduced to support them, show jurisdiction under the treaty between the United States and Great Britain as interpreted by the Supreme Court in the Cook Case.

Though meager, we think they are adequate. There is a general averment of admi-

ralty and maritime jurisdiction and a specific averment as to the location of the schooner with respect to the coast at the time of her seizure. The government introduced evidence in support of these averments which, as it happened, brought them within the treaty. It proved that when sighted the schooner was about five miles from the coast headed westward; when hailed she changed her course and fled; when seized she had gone about three-quarters of a mile in fifteen minutes, proving, the claimant contends, a speed of this sea-going vessel of not more than three miles an hour—the distance from the coast she could traverse in that time—and therefore indicating a position beyond the treaty limits. The government, however, next proved by her certificate of British registry that, with a length of 128.4 feet and a register tonnage of 131.64, she had two sets of engines, two shafts having four cylinders in each set, a stroke of 14 inches, and a speed of ten knots an hour. If her registered speed was her true speed she was, when stopped and seized, five and three-quarter miles from the coast, within the treaty limits and within the jurisdiction of the United States and of the trial court.

Ten knots an hour was the schooner's speed at the date of her registry in October 1925. That such was her speed when, sailing under the same certificate of registry, she was seized in October 1930, the claimant did not deny. On this prima facie showing of speed, and of motive power to produce it, which ordinarily is the best evidence that can in such cases be obtained, we hold the government supported its averments of admiralty and maritime jurisdiction. Distinguished by the facts from The Miss C. B. (C. C. A.) 63 F.(2d) 639.

The decree below, or so much of it as may remain after the execution of our order of July 7, 1933 in respect to a new bond for the release of the vessel, is affirmed.